UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

                          CASE NO. 8:25-cr-00299-VMC-NHA

v.

LEO JOSEPH GOVONI

### RESPONSE OF THE UNITED STATES IN OPPOSITION TO APPEAL BY DEFENDANT LEO GOVONI

The United States opposes Defendant Leo Govoni's Motion for Revocation of Order of Detention Pending Trial and Appeal to District Court to Request Pretrial Release (Doc. 46). The Honorable Amanda Arnold Sansone appropriately found that Defendant should be detained because "no conditions of release will reasonable ensure Mr. Govoni's appearance as required." Doc. 37 at 2. This Court should affirm that order.

Defendant has shown he willfully fails to comply with court instructions and has the means and motive to flee and escape prosecution. Defendant recently engaged in sustained behavior in contempt and defiance of court orders in the pending bankruptcy proceedings. Defendant's assets, his known efforts to hide those assets, and the likelihood he is facing a lengthy prison sentence make him a flight risk. *See* 18 U.S.C. § 3142(f)(2)(A). His repeated and recalcitrant pattern of obstruction in the ongoing bankruptcy proceedings shows he poses a danger of further obstructing Court proceedings. *See* 18 U.S.C. § 3142(f)(2)(B).  Indeed, Defendant is currently in contempt in those proceedings and has made no effort to

1

purge that contempt —while asking *this* Court to trust him to appear for Court proceedings and trust he will not continue his obstruction.

## I.    PROCEDURAL HISTORY

Bankruptcy Case

The relevant procedural history starts with the Center for Special Needs Trust Administration (CSNT) bankruptcy case. CSNT, a non-profit entity that managed funds for thousands of clients with special needs for almost twenty years, filed for bankruptcy in early February 2024 and publicly disclosed the embezzlement of $100 million by Defendant Govoni and his company, Boston Finance Group (BFG), leading to CSNT's insolvency. Between February 2024 and September 2024, during bankruptcy proceedings and after being publicly accused of a massive theft from over 1,000 special needs victims and families who entrusted their money to Defendant, mostly children and/or people with mental and physical disabilities, Defendant willfully made efforts to sell and hide assets. Defendant procured $1.65 million in proceeds of real estate sales; when asked about the whereabouts of these funds, Defendant refused to tell the Bankruptcy Court or Bankruptcy Trustee. *See* Attachment A. Defendant likewise failed to tell Pretrial Services and the Magistrate Court.

In January 2025, the Court entered summary judgment against the Defendant and BFG in the bankruptcy proceeding, finding them both liable for $120 million in damages. Between January and June 2025, Defendant essentially thumbed his nose at the judgment, refusing to provide information on his assets and instead providing

2

false financial statements and false testimony before the Court. As a result, on May 5, 2025, U.S. Bankruptcy Judge Roberta Colton found Defendant and BFG in contempt. *See* Attachment B (Colton 5/5/25 Order). In that order, Judge Colton stated, "Govoni's contempt of this Court's orders is not only willful, but it is also *knowingly intended to further injure the victims.*" *Id.* at 13 (emphasis added). Defendant continued his contemptuous behavior, and on June 12, 2025, Judge Colton issued a final order of contempt. *See* Attachment C (Colton 6/12/25 Order). Defendant has made no effort to purge that contempt.

Criminal Case

A federal grand jury returned a criminal indictment against the Defendant on June 18, 2025. Doc. 1 As reflected in the fifteen-count Indictment, Defendant Govoni masterminded an over $100 million complex and sophisticated wire fraud, mail fraud, and money laundering scheme that spanned 15 years. *Id.* The Government incorporates by reference its prior memorandum outlining the nature and circumstances of the offenses, Doc. 8. With expected enhancements and under the applicable statutory maximums, Defendant is facing a guidelines sentence of up to 30 years in prison if convicted.

Magistrate Judge Amanda Arnold Sansone held a detention hearing on June 26, 2025, at which she ordered Defendant detained. Doc Nos. 37, 41. After robust presentations by both parties, Judge Sansone concluded that each of the four factors under the Bail Reform Act, 18 U.S.C. § 3142(g) — 1) the nature of circumstances of the offense, 2) the weight of the evidence, 3) the history and characteristics of

Defendant, and 4) the nature and seriousness of the danger to others or the community—weighed in favor of detention. Doc. 41 at 52-56. Specifically, she found that the Defendant should be detained because 1) he faces a lengthy prison sentence; 2) he is accused of embezzling $100 million from special needs trust funds; 3) he made more than $1.5 million in proceeds from real-estate transactions after the bankruptcy filing, and he has refused to disclose where these proceeds went; 4) he likely has significantly more assets available than what the bankruptcy trustee has known; 5) after receiving grand jury subpoenas, Defendant transferred money from his accounts into his wife's accounts; 6) Defendant refused to comply with Court orders in the bankruptcy proceeding; 7) Defendant "willfully disobeyed" three bankruptcy court discovery orders; and 8) Bankruptcy Judge Colton concluded that Defendant "stonewalled" the bankruptcy collection efforts and that his "'recalcitrance has impaired [the Trustee's] ability to execute on the Judgment.'" Additionally, Judge Sansone found that Defendant posed "a danger" based on his history of obstruction in the bankruptcy proceedings and specifically the fact that he "willfully disobeyed" that Court's orders. *Id.* at 55 (citing Attachment C at 2 (Colton 6/12/25 order)).

## II.    NO COMBINATION OF CONDITIONS WILL ASSURE DEFENDANT'S APPEARANCE AND SAFETY OF COMMUNITY

In his motion, the Defendant disputes the Court's legal conclusions but not Judge Sansone's factual findings. Nor does he dispute the weight of the evidence against the Defendant.

Given the undisputed evidence before this Court that Defendant has significant assets, which the Defendant has hid from the Court and could use to flee, and that Defendant has a pattern of obstruction, this Court should reach the same conclusion as Judge Sansone and detain the Defendant.

Title 18, United States Code, Section 3142(f) provides that a judge should order the detention of a person prior to trial if the judge "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." "Pursuant to 18 U.S.C. § 3145, following a magistrate's order that a detainee be held without bond pending trial, the detainee may move the district court to revoke or amend the magistrate's pretrial detention order." *United States v. King*, 849 F.2d 485, 490 (11th Cir. 1988). A finding that a defendant represents a danger to the community must be supported by clear and convincing evidence, while a finding of risk of flight need only be supported by a preponderance of the evidence. *See United States v. Quartermaine*, 913 F.3d 910, 917 (11th Cir. 1990) (citations omitted). Review of a magistrate judge's pretrial detention order is *de novo*, with purely factual findings reviewed for clear error. *See United States v. Hurtado*, 779 F.2d 1467, 1471–73 (11th Cir. 1985).

## A.   Defendant is indicted for running a $100 million fraud scheme

At the detention hearing and in its pre-hearing filing (Doc. 8), the Government proffered that over the course of fifteen years, the Defendant embezzled over $100

million from special needs victims who entrusted their money to him, mostly children and/or people with mental or physical disabilities, leaving many of them struggling financially. *See* 18 U.S.C. § 3142(g)(1). He did so by stealing from the non-profit he co-founded, CSNT. He victimized hundreds, if not thousands, of people, most of whom are among society's most vulnerable. And the evidence against him is strong, *see* 18 U.S.C. §3142(g)(2), which Defendant did not dispute in his motion (although he appropriately noted the weight of the evidence was the most insignificant factor in the Court's detention analysis, Doc. 46 at 8).

### B. If given the opportunity, Defendant has the motive and means to flee

Defendant received substantial assets from this scheme. As detailed in the filing and at the hearing, the $100 million that Defendant stole was used to fund his other business ventures, line his pockets, and enrich his family and co-conspirators. Some of that money has been traced to the properties listed in the forfeiture section of the indictment—including Defendant's residence and the residence of his family members and co-conspirators. But the location of much of that money is unknown – and likely available to Defendant. At a minimum, it is known that Defendant gained $1.6 million by selling properties after the bankruptcy proceeding began and that he transferred another $1 million to his wife—that is, after he knew that doing so would obstruct Court proceedings. His contemptuous behavior and refusal to tell the Bankruptcy Court where he concealed those funds indicates they are available to him to use to flee. As mentioned above, the defendant faces a sentence, if convicted,

6

that could extend to the rest of his natural life. The prospect of spending the rest of his life in prison is a powerful motive to abscond, and there is evidence he has the means to do so.

Because of the defendant's access to fraud proceeds, his probable sentence, and the sophistication of his conduct, he is a risk of flight. These circumstances outweigh any tether to the region through his family and ties here. The question becomes not if he will flee, but when.

### C.    If given the opportunity, Defendant will obstruct proceedings

Defendant's repeated history of obstructing the bankruptcy proceedings shows that the same obstructive conduct is likely here if he is released.

It is true that obstruction is rarely a ground for detention, but this is the rare case where it is appropriate. The old adage, "fool me once, shame on you, fool me twice, shame on me" is aptly referenced here. To trust Defendant to stop his obstruction now would be the equivalent of fool me four times or five times. In fact, Defendant's obstruction has continued since his arrest because he has failed to purge his contempt or disclose his assets.

As the Second Circuit held in *United States v. LaFontaine*, 210 F.3d 125, 127 ("[O]bstruction of justice by a white-collar criminal, even where it does not involve violence or threat of violence, may support a finding of danger to the community."); *see also United States v. Stein*, No. S1-05-cr-0888 (LAK), 2005 WL 8157371, at *2 (S.D.N.Y. Nov. 14, 2005) (stating "The Court agrees in principle that . . .

obstruction poses a danger to the community and that the risk of such activities, in an appropriate case, would support pretrial detention," but ultimately detaining the defendant on ground of flight risk, not obstruction).

Given Defendant's repeated, recalcitrant disregard of prior court orders, obstruction is a real concern. And in a case like this where the obstructive conduct includes hiding money from potentially being recovered for victims of his fraud, the Defendant's obstruction is no mere flouting of formal court procedures—his obstruction is a continuing risk to hundreds of vulnerable victims' solvency, medical care, and thus safety.

### D.    Pretrial Monitoring is Not Sufficient

Defendant's past circumvention of court orders demonstrates that pretrial monitoring is not sufficient. Pretrial detention—even with electronic monitoring or restrictions on Internet access —can be circumvented. As the Second Circuit has noted, "Home detention and electronic monitoring at best elaborately replicate a detention facility without the confidence of security such a facility instills." *United States v. Millan*, 4 F.3d 1038, 1048-49 (2d Cir. 1993). At best, home confinement and electronic monitoring would reduce a defendant's head start after cutting the bracelet. *See United States v. Banki*, 10 Cr. 008 (JFK), Doc. 7 (S.D.N.Y. Jan. 21, 2010) (denying bail and noting that electronic monitoring is "hardly foolproof"), *aff'd*, 369 F. App'x 152 (2d Cir. 2010). Moreover, release with electronic monitoring would allow the defendant to continue to access or potentially move more of his

funds out of the reach of both this Court and the bankruptcy court.

### III.    CONCLUSION

Defendant's risk of flight and pattern of obstruction each independently support his detention. Defendant's appeal is therefore without merit and should be denied.

Respectfully submitted,

GREGORY W. KEHOE
United States Attorney

LORINDA I. LARYEA
Acting Chief, Fraud Section
Criminal Division

By:    */s/ Jennifer L. Peresie*
Jennifer L. Peresie
Assistant United States Attorney
United States Attorney No. 120
400 N. Tampa Street, Ste. 3200
Tampa, FL 33602-4798
Telephone: (813) 274-6000
Facsimile: (813) 274-6358
E-mail: jennifer.peresie@usdoj.gov

By:    */s/ Lyndie M. Freeman*
Lyndie M. Freeman
Trial Attorney, Fraud Section
Criminal Division
1400 New York Ave.
Washington, DC 20005
Telephone: (202) 514-2000
E-mail: lyndie.freeman@usdoj.gov

**United States v. Govoni**                    **Case No. 8:25-cr-299-WFJ-NHA**

## CERTIFICATE OF SERVICE

I hereby certify that on July 16, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Jennifer L. Peresie
Jennifer L. Peresie
Assistant United States Attorney
United States Attorney No. 120
400 N. Tampa Street, Ste. 3200
Tampa, FL 33602-4798
Telephone: (813) 274-6000
Facsimile: (813) 274-6358
E-mail: jennifer.peresie@usdoj.gov