UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                              Case No.: 8:25-cr-299-VMC-NHA

LEO JOSEPH GOVONI
_____/

## ORDER

This matter comes before the Court pursuant to Defendant Leo Joseph Govoni's Motion for Revocation of Order of Detention Pending Trial and Appeal to District Court pursuant to 18 U.S.C. § 3145(b) to Request for Pretrial Release (Doc. # 46), filed on July 9, 2025. The United States of America responded in opposition on July 16, 2025. (Doc. # 52). For the reasons that follow, the Motion is denied.

## I.   Background

On June 18, 2025, Mr. Govoni was indicted on fifteen counts: conspiracy to commit mail fraud and wire fraud (Count One); mail fraud (Counts Two through Five); wire fraud (Counts Six through Eleven); money laundering conspiracy (Count Twelve); bank fraud (Count Thirteen); illegal monetary transactions (Count Fourteen); and false bankruptcy declaration (Count Fifteen). (Doc. # 1). These alleged crimes

1

are economic in nature. Essentially, Mr. Govoni is accused of embezzling over $100 million from vulnerable individuals whose special needs trusts Mr. Govoni's non-profit entity, The Center for Special Needs Trust Administration, was entrusted to administer. This money was embezzled from over 1,500 victims. (Doc. # 41 at 50). After new management realized that over $100 million in client funds was missing, Mr. Govoni's entity declared bankruptcy. See In re The Center for Special Needs Trust Administration, Inc., Case No. 8:24-bk-676-RCT (Bankr. M.D. Fla. 2024); Goldberg, as Chapter 11 Trustee of the estate of Debtor v. Boston Finance Group, LLC et al, Case No. 8:24-ap-139-RCT (Bankr. M.D. Fla. 2024). Regarding the false bankruptcy declaration count, Mr. Govoni is accused of "knowingly and fraudulently mak[ing] a materially false declaration . . . under penalty of perjury, by submitting and causing to be submitted a Statement of Fact Information Sheet stating that his only account or investment was a 'retirement account' when in fact, as [Mr. Govoni] knew, he had multiple other personal accounts, investments, and business ownership interests." (Doc. # 1 at 28).

Before Mr. Govoni's initial appearance, the United States filed a memorandum in which the United States expressed an intent to seek heightened bond conditions for Mr. Govoni.

2

(Doc. # 8). The United States asserted that Mr. "Govoni presents a substantial risk of flight." (Id. at 1). According to the United States, "Given the likelihood he will be convicted and the lengthy prison term he faces, [Mr.] Govoni has a substantial motivation to flee. He is also believed to have access to the financial means to do so, as well as to potentially have access to a private plane." (Id. at 2). The United States at that time requested that the Court impose a secured bond of at least $1 million and other restrictive conditions. (Id.).

Mr. Govoni had his initial appearance before United States Magistrate Judge Amanda Arnold Sansone on June 23, 2025. (Doc. # 29). At that hearing, Judge Sansone ordered that the issue of bond be taken up at a later detention hearing so that the government could provide notice to victims to exercise their right under 18 U.S.C. § 3771(a)(4) to be heard at the detention hearing. (Doc. # 41 at 3-4). Nevertheless, on that date, Judge Sansone entered a medical order for Mr. Govoni, acknowledging that he "suffers from diabetes, high blood pressure, brain injuries, and cardiovascular conditions." (Doc. # 30). Judge Sansone ordered that Mr. Govoni "must be evaluated by medical staff

at his place of incarceration and receive any prescribed medications unless discontinued by a physician." (Id. at 2).

The detention hearing was held a few days later on June 26, 2025. (Doc. # 36). Multiple victims submitted statements before the detention hearing and some victims spoke at the detention hearing. (Doc. # 41 at 3-12). These victims asked that Mr. Govoni be detained because they feared he would flee and further destroy evidence, given his bad conduct in the Bankruptcy Court proceedings in the previous year. (Id.).

During the detention hearing, the United States moved for Mr. Govoni to be detained pending trial, although it had previously written that release on a high bond with highly restrictive conditions would be sufficient. (Doc. # 35). The United States explained that it had "reconsidered things" and "also [] found out some additional information that [it wanted] to bring to the Court's attention that caused [the government] to change [its] position." (Doc. # 41 at 6-7).

As justification for the detention hearing, the United States invoked both Section "3142(f)(2)(A) and (B)" (Doc. # 41 at 22), which provide that a detention hearing should be held "upon motion of the attorney for the Government or upon the judicial officer's own motion, in a case that involves — (A) a serious risk that such person will flee; or (B) a

serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror." 18 U.S.C. § 3142(f)(2). Although the United States also argued that Mr. Govoni was a flight risk under Section 3142(f)(2)(A), it "particularly focus[ed] on (f)(2)(B)" concerning the risk of obstruction of justice. (Doc. # 41 at 22). According to the United States, Mr. Govoni "present[s] a very real danger to the community if he was in a position where he could further dissipate assets, dissolve companies, hide assets, transfer assets, all of those things would endanger the vulnerable special needs victims that are at the heart of this case." (Id. at 22-23).

The United States then outlined "all the different ways [Mr. Govoni] has attempted to obstruct justice, whether that be in the bankruptcy proceeding or the criminal one since January 2024." (Id. at 23). Among other things, after receiving grand jury subpoenas related to the criminal investigation in April 2024, Mr. Govoni transferred "at least a million dollars" out of "his jointly owned personal accounts into accounts that were solely in his wife's name." (Id. at 23-25). Additionally, the Bankruptcy Court entered summary judgment against Mr. Govoni for over $100 million and enjoined

Mr. Govoni "from directly or indirectly encumbering, liquidating, transferring, spending, diminishing, or otherwise disbursing the assets of any of his companies." (Id. at 25-26). Nevertheless, Mr. Govoni "flouted that order over and over and over again throughout 2025." (Id. at 26). For example, Mr. Govoni sold "multiple properties, gaining at least $1.6 million in proceeds," which the Bankruptcy Trustee has not been able to locate. (Id. at 26, 35).

Additionally, Mr. Govoni ignored the Bankruptcy Court's March 2025 order to produce certain documents and, up to the day of the detention hearing, had "still not produced those documents." (Id. at 26). This led the Bankruptcy Court to hold Mr. Govoni in contempt with a $5,000 per day fine until he turned over those documents. (Id.). Yet, for "40 days [Mr. Govoni] refused over and over again to turn over those documents, racking up $200,000 in contempt." (Id.). Mr. Govoni "never provided the documents" and "never paid a dollar of that contempt fee." (Id. at 27).

Later, as permitted by the Bankruptcy Court, the appointed chief restructuring officers attempted to access the brewery building that served as Mr. Govoni's headquarters. (Id. at 28). Although Mr. Govoni was inside the building, he refused to let the chief restructuring officers

enter, in direct violation of the Bankruptcy Court's order. (Id.). On the same day the Bankruptcy Court entered a sanctions order based on Mr. Govoni's violation, Mr. Govoni "was caught going inside . . . the Govoni headquarters, and removing valuable commercial-grade coffee machines and barrels of rum . . . to prevent the [chief restructuring officers] from taking it" — again, in direction violation of the Bankruptcy Court's order. (Id.). Mr. Govoni also "dissolved some of the companies that the [chief restructuring officers] have been put in charge of administering." (Id.). Mr. Govoni allegedly accomplished this by "lying to and manipulating one of [the brewery's] employees, a graphic designer," into filling out the paperwork to dissolve these companies. (Id. at 28-29).

Based on these actions, the United States concluded that Mr. Govoni, despite being on notice for over a year that "he is under criminal investigation via the grand jury subpoenas, despite him knowing that he's part of a bankruptcy proceeding and directly ordered by the judge not to do any of these things, he has acted over and over and over again to obstruct and frustrate justice." (Id. at 29). According to the United States, "[t]here's no reason for this Court to believe that if [the Court] released [Mr. Govoni] on any conditions that

7

he would not continue to do exactly as he has done. Court orders do not appear to be particularly significant to [Mr. Govoni]." (Id. at 29-30). The United States also noted that "the incentives to flee are high" and that "[g]iven everything else [Mr. Govoni] has done, [the government] cannot see how the Court could trust" Mr. Govoni not to cut off an ankle monitor and flee. (Id. at 35).

For his part, Mr. Govoni argued that he should be released on bond with restrictive conditions to assure the Court he would not flee. (Id. at 36-39). He insisted that he was not a danger to others because his alleged crimes were only economic in nature. (Id.). He emphasized his lack of criminal history, poor health, long residence in this District, and his familial ties to the area. (Id. at 42-48).

At the end of the hearing, Judge Sansone orally granted the United States's motion for detention. (Doc. # 36). She explained that each of the four 18 U.S.C. § 3142(g) factors weighed in favor of detention. (Doc. # 41 at 52-56). In the subsequent order of detention, Judge Sansone concluded, "by a preponderance of the evidence, that no conditions of release will reasonably ensure Mr. Govoni's appearance as required." (Doc. # 37 at 3). Judge Sansone outlined the facts that led her to this conclusion:

(1) if convicted, Mr. Govoni is facing 30 years in prison if sentenced so that his sentences run concurrently, and 265 years in prison, if sentenced so that his sentences run consecutively;

(2) Mr. Govoni is accused of embezzling approximately $100 million over a 15 year period from individuals with special needs who had entrusted their money to Mr. Govoni for safekeeping so it could be available to pay their medical bills and other necessities — instead Mr. Govoni is accused of spending that $100 million on luxury items ranging from real estate to a private airplane to a club box at Raymond James Stadium;

(3) within approximately the last year, Mr. Govoni, via other of his entities, sold $6 million worth of real estate that netted $1.5 million and the bankruptcy trustee has been unable to locate the $1.5 million for the benefit of the trust beneficiaries;

(4) the government and the Chapter 11 Trustee have concerns that Mr. Govoni has significantly more assets available to him than what they have been able to locate to date;

(5) after receiving grand jury subpoenas, Mr. Govoni began a series of large financial transactions in an effort to transfer a total of over $1 million from his bank accounts to bank accounts in his wife's name only;

(6) after being told in the bankruptcy proceeding that he could no longer operate Big Storm Brewery and his other entities, he refused to allow access by the chief restructuring officers appointed by the bankruptcy court to run them, removed expensive equipment without permission, accessed/trespassed the premises, and later tricked a graphic designer at Big Storm Brewery to prepare and file corporate dissolution papers for the entities with the State of Florida without telling that person that he was not permitted to do that;

9

(7) Bankruptcy Judge Roberta Colton concluded in a June 12, 2025 Final Order of Contempt that Mr. Govoni "willfully disobeyed" three bankruptcy court discovery orders and sanctioned him with a daily $5,000 sanction until he provides the financial records he owes the Chapter 11 Trustee; and

(8) Bankruptcy Judge Colton also concluded Mr. Govoni had stonewalled the Chapter 11 Trustee's collection efforts and that Mr. Govoni's "recalcitrance has impeded [the Trustee's] ability to execute on the Judgement."

(Id. at 3-4). Judge Sansone held that "electronic monitoring and a bond secured by property the government argues is subject to forfeiture in this case anyway is insufficient to assure the defendant's presence in court." (Id. at 4).

Now, Mr. Govoni moves to revoke the Magistrate Judge's order of detention. (Doc. # 46). He raises legal arguments concerning whether the Magistrate Judge erred in ordering detention based on the evidence before the Court. See (Id. at 4-5) ("[T]he Government bore the burden to prove by 1) clear and convincing evidence that Mr. Govoni was a danger to the community and/or by 2) a preponderance of the evidence that Mr. Govoni was a flight risk. . . . The Government failed to prove either at the detention hearing."). He has not submitted any additional evidence for this Court to consider. The United States has responded (Doc. # 52), arguing that Mr. Govoni's

10

"risk of flight and pattern of obstruction each independently support his detention." The Motion is now ripe for review.

## I.  Legal Standard

### A.  Section 3145(b)

Pursuant to 18 U.S.C. § 3145(b), "[i]f a person is ordered detained by a magistrate judge, . . . the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order" and the Court should rule on the motion "promptly." 18 U.S.C. § 3145(b). "[I]n this situation, the district court must conduct an independent review to determine whether the magistrate properly found that pretrial detention is necessary." United States v. King, 849 F.2d 485, 490 (11th Cir. 1988). This "independent review" is de novo. See United States v. Gaviria, 828 F.2d 667, 670 (11th Cir. 1987) ("[W]e affirm the district court's denial of Gaviria's and Echeverry's request for a de novo hearing because the district court properly afforded de novo review of the magistrate's detention order.").

"At this point, the district court has two options." King, 849 F.2d at 490. "First, based solely on a careful review of the pleadings and the evidence developed at the magistrate's detention hearing, the district court may

11

determine that the magistrate's factual findings are supported and that the magistrate's legal conclusions are correct." Id. "The court may then explicitly adopt the magistrate's pretrial detention order. Adoption of the order obviates the need for the district court to prepare its own written findings of fact and statement of reasons supporting pretrial detention." Id.

Still, "the district court is to enter its own findings of fact where factual issues remain to be resolved." Id. But "when a motion to revoke or amend a pretrial detention order attacks only the magistrate's legal conclusion that pretrial detention is necessary, and no factual issues remain unresolved, the district court need not enter findings of fact when adopting the magistrate's pretrial detention order." Id.

The second option allows the Court to acquire more evidence to make its detention determination. "If the district court, after reviewing the detainee's motion, determines that additional evidence is necessary or that factual issues remain unresolved, the court may conduct an evidentiary hearing for these purposes." Id. "In this instance, the district court must enter written factual findings and written reasons supporting its decision." Id.

"Of course, if the district court concludes that the additional evidence does not affect the validity of the magistrate's findings and conclusions, the court may state the reasons therefor and then explicitly adopt the magistrate's pretrial detention order." Id. at 490-91.

**B.    Factors Considered**

Section 3142 governs the release or detention of a defendant pending trial. 18 U.S.C. § 3142. Under Section 3142(c), "[i]f the judicial officer determines that the release described in subsection (b) of this section will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community, such judicial officer shall order the pretrial release of the person — (A) subject to the condition that the person not commit a Federal, State, or local crime during the period of release . . . and (B) subject to the least restrictive further condition, or combination of conditions, that such judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c). Numerous possible conditions are listed. (Id.).

Section 3142(f) specifies that the "judicial officer" — here it was the Magistrate Judge — "shall hold a hearing to

determine whether any condition or combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f) (emphasis added). Again, the United States moved for detention under Section 3142(f)(2)(A) & (B), which provide that a detention hearing should be held "upon motion of the attorney for the Government or upon the judicial officer's own motion, in a case that involves — (A) a serious risk that such person will flee; or (B) a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror." 18 U.S.C. § 3142(f)(2).

"If, after a hearing pursuant to the provisions of subsection (f) of this section, the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial." 18 U.S.C. § 3142(e)(1).

Under Section 3142(g), there are multiple factors for the Court to consider in determining whether there are

conditions of release that will reasonably assure the appearance of the defendant as required and the safety of any other person and the community:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

Importantly, "18 U.S.C. § 3142(f) establishes when the Court should hold a detention hearing, while 18 U.S.C. § 3142(g) contains the factors to be considered by the Court in

determining whether to detain the defendant." <u>United States v. Castellanos-Almendares</u>, No. 19-cr-80144, 2019 WL 3937862, at *2 (S.D. Fla. Aug. 20, 2019). "[O]nce there is a basis to hold a detention hearing, the Court is required to consider if any conditions of release would ensure the safety of the community and the appearance of Defendant pursuant to 18 U.S.C. § 3142(g)." <u>Id.</u> "[T]he plain meaning of the statute is that, once a court has a basis to hold a detention hearing, that court is **required** to consider whether there are any conditions of release that will reasonably assure the safety of any person and the community, and the court is also required to consider the nature and seriousness of the danger to any person or the community that would be posed by the person's release." <u>Id.</u>

"Nothing in [Section 3142] shall be construed as modifying or limiting the presumption of innocence." 18 U.S.C. § 3142(j).

## II.  <u>Discussion</u>

While the Court will review the order of detention de novo, an evidentiary hearing is not required. The United States is correct that Mr. Govoni is "disput[ing] the Court's legal conclusions but not Judge Sansone's factual findings." (Doc. # 52 at 4). Indeed, Mr. Govoni argues that the

16

Magistrate Judge erred in concluding, based on the evidence at the detention hearing, that Mr. Govoni was a flight risk by a preponderance of the evidence. (Doc. # 46 at 4-5). Mr. Govoni has not presented additional evidence for the Court to consider or asserted that there are factual disputes this Court must resolve at an evidentiary hearing. While the United States has submitted some exhibits with its response, these exhibits are merely corroboration of the facts the United States presented during the detention hearing, including copies of already-referenced Bankruptcy Court orders and a chart outlining Mr. Govoni's approximately $1.6 million in real estate proceeds that the Bankruptcy Trustee has been unable to locate. The Court need not consider these additional documents, as they present no new information.

Therefore, the Court will follow the first option for handling this Motion: independently review the pleadings and the evidence that was presented to the Magistrate Judge and — if appropriate — adopt the Magistrate Judge's pretrial detention order without holding a hearing. See United States v. Ensley, No. 1:12-mj-1460-LTW, 2012 WL 5463899, at *1 (N.D. Ga. Nov. 8, 2012) ("In conducting this de novo review, a hearing is not required and the district court may rely entirely on the pleadings and the evidence developed at the

magistrate's detention hearing, or it may conclude that additional evidence is necessary and conduct its own evidentiary hearing.").

Upon independent review of the Motion, the United States's response, the transcript of the detention hearing (Doc. # 41), the Magistrate Judge's detention order (Doc. # 37), the pretrial bail report (Doc. # 38), and the rest of the record, the Court agrees with the Magistrate Judge that, by a preponderance of the evidence, no conditions or combination of conditions of release will reasonably assure Mr. Govoni's appearance as required.[1]

The Court is especially troubled by a few facts, which the Magistrate Judge noted. Mr. Govoni is accused of stealing $100 million from over a thousand disabled individuals who trusted him. He allegedly used these purloined funds to live a life of luxury. Thus, the nature and circumstances of the

---

[1] Additionally, the Court finds that the United States adequately established a basis for holding the detention hearing under both Section 3142(f)(2)(A), regarding risk of flight, and Section 3142(f)(2)(B), regarding risk of obstruction of justice. Thus, the Magistrate Judge was required to hold the detention hearing. As Mr. Govoni does not argue that no detention hearing should have been held, the Court need not address this issue further.

crimes — while only economic in nature — weigh in favor of detention.

Next, it appears that Mr. Govoni has taken numerous steps to hide assets from the government, the Bankruptcy Court, and his alleged victims. See United States v. Giordano, 370 F. Supp. 2d 1256, 1264 (S.D. Fla. 2005) ("Relevant factors that support a serious risk [of flight] finding include . . . hidden assets."). Mr. Govoni transferred $1 million from jointly owned bank accounts over to accounts solely in his wife's name to protect those assets from seizure. Despite the bankruptcy chief restructuring officers being placed in control of Mr. Govoni's various businesses, Mr. Govoni was seen stripping one business of items. Also, Mr. Govoni allegedly manipulated an employee into filing dissolution paperwork for various entities. While Mr. Govoni alleges the dissolutions were merely a "misunderstanding" (Doc. # 41 at 46), the Court — like the Magistrate Judge — does not consider this a plausible explanation. Despite the United States's highlighting of specific instances of Mr. Govoni transferring money and moving assets, Mr. Govoni contends the concerns over his future flight, destruction of evidence, or dissipation of assets is "speculative at best." (Doc. # 46 at 5, 7). The Court disagrees. This past dissipation of assets

indicates a pattern the Court believes will continue if Mr. Govoni is released. Furthermore, the assets that Mr. Govoni has transferred to others or hid in violation of Bankruptcy Court orders easily enable Mr. Govoni to flee.

Most importantly, the Court is deeply troubled by Mr. Govoni's recalcitrance and violation of Court orders in the Bankruptcy Court proceedings. Mr. Govoni has stonewalled efforts to collect on the judgment against him or to cede control of his various entities to the chief restructuring officers, in violation of the Bankruptcy Court's orders. Despite the Bankruptcy Court finding him in contempt and imposing a $5,000 per day fine, Mr. Govoni refused to turn over the required documents. He has further refused to pay the contempt fine, which reached $200,000 before the Bankruptcy Court stopped the daily fine.

This obstructive conduct is part of Mr. Govoni's history and characteristics the Court must consider under Section 3142(g)(3). That factor weighs heavily in favor of detention. The Magistrate Judge is correct that Mr. Govoni's conduct in the Bankruptcy Court "really overshadows anything positive that could be gleaned from the history and characteristics of" Mr. Govoni. (Doc. # 41 at 55). Mr. Govoni's actions in the Bankruptcy Court establish that Mr. Govoni has no respect

for Court orders. This Court is convinced that Mr. Govoni would not abide by any conditions of release this Court could set. This is especially true given that any funds Mr. Govoni would use for bond are likely subject to forfeiture, if he were convicted. (Id. at 51). Thus, even a high bond would not provide sufficient disincentive to flee, despite Mr. Govoni's lack of criminal history and local ties.

The Court also notes that, if Mr. Govoni is convicted, he is likely to spend the rest of his life in prison. At age sixty-seven, he is likely facing at least 30 years in prison if convicted. "A defendant facing a substantial term of imprisonment has commensurate incentive to flee insofar as the cost of taking his chances at trial is great in comparison to the cost of fleeing." United States v. Ingram, 415 F. Supp. 3d 1072, 1085 (N.D. Fla. 2019); see also United States v. Khusanov, 731 F. App'x 19, 21 (2d Cir. 2018) ("[A] district court does not clearly err in concluding that a defendant facing a potentially lengthy prison sentence possesses a strong motive to flee."); United States v. Tomero, 169 F. App'x 639, 641 (2d Cir. 2006) ("[D]espite his ties to the community, defendant's potential for a fifteen-year sentence created a substantial risk of flight.").

While the Court has considered Mr. Govoni's health, a medical order has already been entered by the Magistrate Judge to ensure that the facility in which Mr. Govoni is incarcerated provides him with his medications and treatment. (Doc. # 30). The Court believes this measure is sufficient to address Mr. Govoni's medical situation.

Next, the Court agrees with the Magistrate Judge that the weight of the evidence is strong, even though that is the least important Section 3142(g) factor. See United States v. Motamedi, 767 F.2d 1403, 1408 (9th Cir. 1985) ("[T]he weight of the evidence is the least important of the various factors.").

Finally, as to the danger factor of Section 3142(g)(4), there is a danger that Mr. Govoni would obstruct justice by destroying evidence or further dissipating assets if released. See United States v. LaFontaine, 210 F.3d 125, 127 (2d Cir. 2000) ("[O]bstruction of justice by a white-collar criminal, even where it does not involve violence or threat of violence, may support a finding of danger to the community."). This presents a danger, albeit not a physical danger, to the alleged victims of Mr. Govoni who desperately need to recover their stolen funds. See Giordano, 370 F. Supp. 2d at 1270 ("There can be no question that an economic danger,

like that posed by a serial defrauder, falls under the broad umbrella of 'dangerousness' as that term is used throughout the Bail Reform Act."). This factor weighs in favor of detention, as the Magistrate Judge found. Even if the Court found that this factor was neutral or weighed in favor of Mr. Govoni, the Court would still conclude that detention was necessary by a preponderance of the evidence because of the strength of the other factors.

Balancing all the factors, the Court agrees with the Magistrate Judge that detention is necessary to assure Mr. Govoni's appearance as required. The Court adopts the Magistrate Judge's pretrial detention order. (Doc. # 37). Mr. Govoni's Motion is denied.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

Defendant Leo Joseph Govoni's Motion for Revocation of Order of Detention Pending Trial and Appeal to District Court pursuant to 18 U.S.C. § 3145(b) to Request for Pretrial Release (Doc. # 46) is **DENIED.** Upon de novo review of the record, the Court adopts the Magistrate Judge's pretrial detention order. (Doc. # 37).

23

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this

<u>18th</u> day of July, 2025.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE